## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GERALD THOMAS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-9203** |
| **RAYBURN CORRECTIONAL, ET AL.** | **SECTION: "J"(3)** |

### REPORT AND RECOMMENDATION

Plaintiff, Gerald Thomas, a state prisoner, filed this *pro se* complaint, pursuant to 42 U.S.C. § 1983, against the Rayburn Correctional Center, Captain Clerland, and Lieutenant Moses. Plaintiff complains that he contracted food poisoning and was discriminated against based on his sexual orientation.

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
>     (i) is frivolous or malicious;
>     (ii) fails to state a claim on which relief may be granted; or
>     (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

The Court has broad discretion in determining the frivolous nature of a complaint. Cay v. Estelle, 789 F.2d 318, 325 (5th Cir. 1986), modified on other grounds, Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993). In making that determination, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994). Thus, a complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994); Booker, 2 F.3d at 115 & n.6. Although broadly construing plaintiff's claims,[1] the Court nevertheless finds that, for the following reasons, this civil action should be dismissed as frivolous.

A Spears hearing was held in this case on December 11, 2007, to allow plaintiff a meaningful opportunity to advise the Court of the nature and factual basis of his claims. See Spears v.

---

[1] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

2

McCotter, 766 F.2d 179 (5th Cir. 1985).[2] At that hearing, plaintiff was sworn and his testimony was recorded. Based on his complaint and the Spears hearing testimony, the Court finds that plaintiff is asserting the following claims.

Plaintiff's first claim is that he contracted food poisoning on October 16, 2007, after eating a prison meal containing chicken contaminated by *E. coli* bacteria. As a result, he required medical attention.

Plaintiff's second claim is that he is being discriminated against because he is a homosexual. At the Spears hearing, plaintiff explained that a homosexual inmate struck a heterosexual inmate with a machine and cracked his skull during a fight in November of 2007. Plaintiff was present during the fight, but he did not participate in it or even see it. After that altercation, all homosexual inmates were moved to a different section of the prison and segregated from the heterosexual inmates. The section in which the homosexual inmates are now housed is a non-working cell block, meaning that they are not currently eligible for prison jobs.

## Improper Defendant

As a preliminary matter, the Court notes that plaintiff has improperly named the "Rayburn Correctional Center" as a defendant in this lawsuit. It is clear that "a jail is merely a building, not a 'person' subject to suit under 42 U.S.C. § 1983." Castillo v. Blanco, Civ. Action No. 07-215, 2007

---

[2] "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed.R.Civ.P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

WL 2264285, at *4 (E.D. La. Aug. 1, 2007); see also Martinez v. Larpenter, Civ. Action No. 05-874, 2005 WL 3549524, at *5 (E.D. La. Nov. 1, 2005); Cullen v. DuPage County, No. 99-C-1296, 1999 WL 1212570, at *1 (N.D. Ill. Dec. 14, 1999); Whitley v. Westchester County Correctional Facility Administration, No. 99-CIV-0420(SS), 1997 WL 659100, at *7 (S.D.N.Y. Oct. 22, 1997); Powell v. Cook County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993); Brooks v. Pembroke City Jail, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989); Mitchell v. Chester County Farms Prison, 426 F. Supp. 271, 274 (E.D. Pa. 1976). Accordingly, the claim against the "Rayburn Correctional Center" must be dismissed.

### Food Poisoning

As to plaintiff's claim regarding the food poisoning, it is clear that "a single incident of unintended food poisoning, whether suffered by one or many prisoners at an institution, does not constitute a violation of the constitutional rights of the affected prisoners." George v. King, 837 F.2d 705, 707 (5th Cir. 1988).[3] Accordingly, plaintiff's food poisoning claim should be dismissed as frivolous. Id.

### Discrimination

Plaintiff's remaining claim that he has suffered discrimination based on his sexual orientation fares no better. The United States Supreme Court has stated:

> [A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. Such a classification cannot run

---

[3] At most, plaintiff's claim for food poisoning is one based on negligence and, therefore, is not cognizable pursuant to § 1983. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." Baker v. McCollan, 443 U.S. 137, 146 (1979).

4

>afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. ... [A] classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

Heller v. Doe, 509 U.S. 312, 319-20 (1993) (citations omitted).  It has further been noted:

>When equal protection challenges arise in a prison context, ... courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner.  In a prison context, therefore, we must determine whether the disparate treatment is reasonably related to any legitimate penological interests.

Veney v. Wyche, 293 F.3d 726, 732 (4th Cir. 2002) (citations, quotation marks, and brackets omitted).  To that end, the United States Fifth Circuit Court of Appeals has held:

>In reviewing [a prisoner's] discrimination claim we cannot disregard the special difficulties that arise in the prison context.  Our inquiry must acknowledge the importance of the state's interest in the prison setting.  We must accord wide ranging deference to the decisions of prison administrators and permit them to make difficult judgments concerning prison operations.  A prisoner does not retain constitutional rights that are inconsistent with the legitimate penological objectives of the correction system.

Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990) (citation omitted).

Turning to the first prong of the equal protection analysis, the Court finds that the transfer of the homosexual inmates to the non-working cell block in this case implicates no fundamental right.  It is clear that a prisoner has no constitutional right to choose the location of his confinement or to be housed in or remain in a particular cell block or wing of a prison.  Yates v. Stalder, 217 F.3d 332, 334 (5th Cir. 2000); Castillo v. Blanco, Civ. Action No. 07-215, 2007 WL 2264285, at *10 (E.D. La. Aug. 1, 2007); Luedtke v. Gudmanson, 971 F.Supp. 1263, 1271 (E.D. Wis. 1997).  The fact that the homosexual prisoners are currently housed in a non-working cell block likewise

implicates no fundamental right, because a prisoner has no constitutional right to a prison job. See Tighe v. Wall, 100 F.3d 41, 42 (5th Cir. 1996); Oladipupo v. Austin, 104 F.Supp.2d 626, 638 (W.D. La. 2000).

Further, it is clear that this case does not involve a suspect class. Neither the United States Supreme Court nor the United States Fifth Circuit Court of Appeals has recognized sexual orientation as a suspect classification or homosexuals as a protected group. Johnson v. Johnson, 385 F.3d 503, 532 (5th Cir. 2004).

Therefore, because this case involves neither a fundamental right nor a suspect class, the only remaining issue is whether the segregation of the homosexual and heterosexual prisoners here was reasonably related to any legitimate penological interest. That inquiry merits little consideration under the facts alleged.

In the instant case, the legitimate penological interests are evident. The homosexual and heterosexual inmates were segregated into different housing units immediately following an incident in which a homosexual inmate attacked and severely injured a heterosexual inmate in a prison fight. It takes no great insight to discern at least two penological interests advanced by the segregation of the two factions: (1) the preservation of order at the prison between the two groups and (2) prevention of the opportunity for retaliatory violence against the homosexual inmates. Moreover, it is clear that prison security and safety are *legitimate* penological interests. Veney, 293 F.3d at 732.

Therefore, the action challenged here must be upheld if the segregation of the factions was *reasonably related* to achieving those legitimate interests. Again, it is evident that it was. Even

absent the triggering altercation in this case, anti-homosexual confrontations and violence are rife in society in general and in prisons in particular, and the separation of heterosexual and homosexual inmates is a reasonable measure employed to alleviate such problems. As one court has noted:

> [H]ousing homosexuals with heterosexuals might cause friction between cellmates that potentially could lead to violence. In light of examples of anti-homosexual violence in our society, we cannot ignore the fact that homosexuals are subject to bias-motivated attacks from heterosexuals. See Dickerson v. United States, 530 U.S. 428, 443, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (noting that aspects of national culture are relevant in constitutional analysis). Outside of the prison environment, concerns of bias-motivated attacks on homosexuals have prompted almost half of the states to protect homosexuals with hate crime statutes. See, e.g., Fla. Stat. ch. 775.085 (2001) (increasing penalty for crimes that evidence prejudice based on, among other characteristics, sexual orientation); Ky.Rev.Stat. Ann. § 532.031 (Baldwin 2001) (defining hate crimes to include offenses motivated by sexual orientation); see also State Hate Crimes/Statutory Provisions at http://www.adl.org/99hatecrime/provisions.html (2001). Studies also have shown that inmates known to be homosexuals are at a greater risk of being sexually attacked in prison. See Robert Dumond, Inmate Sexual Assault: The Plague that Persists, 80 Prison J. 407, 408 (2000) (listing homosexuals as a group that appears to be more vulnerable to sexual victimization). Thus, in the prison environment, where inmates live in close quarters and their movements are restricted, prison officials reasonably may conclude that more proactive measures are required to protect homosexuals from bias-motivated attacks.

Veney, 293 F.3d at 733-34. Those considerations, along with the additional burdens on guards to prevent and control disturbances between the factions absent segregation and the absence of ready alternatives to such segregation, lead to the conclusion that such segregation, especially after the altercation which triggered the instant action, is reasonably related to advancing the legitimate penological interests of preservation of order and prevention of violence.

Accordingly, for all of the foregoing reasons, plaintiff's discrimination claim should be dismissed.

**RECOMMENDATION**

It is therefore **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this second day of January, 2008.

_____
**DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE**